1 | **Yee-Horn Shuai, Esq.**
**SHUAI & ASSOCIATES**
2 | 301 E. Colorado Blvd., Suite 514
Pasadena, California 91101
3 | Tel. (626) 405-0348
Fax (626) 405-0890
4 | Bar No. 104897
E-mail: yhshuai@gmail.com
5 |
Attorney for John Tam, Jamie Yang,
6 | and Corey Fong

7 |

8 | UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA
9 |

10 | ACTIVISION PUBLISHING, INC., a
Delaware corporation,
11 |
Plaintiff,
12 |

13 | vs.

14 |
JOHN TAM, an individual, JAMIE YANG, an
15 | individual, COREY FONG, an individual,
DOUG KENNEDY, an individual, HONG YIP
16 | LOW, an individual, RAYMOND YOW, an
individual, REVERB COMMUNICATIONS,
17 | INC., a California corporation, and THE ANT
COMMANDOS, INC., a California
18 | corporation,

19 | Defendants.

20 | —

21 |

| ) | Case No. C07-03536 MEJ |
| ) | |
| ) | **JOHN TAM, COREY FONG AND JAMIE** |
| ) | **YANG'S REPLY TO ALL DEFENDANTS'** |
| ) | **OPPOSITION TO THEIR MOTION FOR** |
| ) | **ORDER DETERMINING GOOD FAITH** |
| ) | **SETTLEMENTS AND BARRING OF** |
| ) | **FUTURE CLAIMS AGAINST SETTLING** |
| ) | **PARTIES; MEMORANDUM OF POINTS** |
| ) | **AND AUTHORITIES; DECLARATIONS OF** |
| ) | **JOHN TAM, COREY FONG, JAMIE YANG** |
| ) | **AND YEE-HORN SHUAI** |
| ) | |
| ) | Complaint Filed:    January 18, 2007 |
| ) | |
| ) | Date:  August 30, 2007 |
| ) | Time:  10:00 AM |
| ) | Dept.: Courtroom B, 15th Floor |
| ) | Judge: Honorable Marie-Elena James |

22 | CONFIDENTIAL

23 | CONTAINS MATERIALS DESIGNATED BY ACTIVISION AS CONFIDENTIAL SUBJECT

24 | TO A PROTECTIVE ORDER ENTERED IN THIS ACTION.  IT IS NOT TO BE OPENED

25 | NOR ARE ITS CONTENTS TO BE DISPLAYED, REVEALED OR MADE PUBLIC,

26 | EXCEPT BY ORDER OF THE COURT.

27 |

28 |

1    In response to the oppositions of defendants The Ant Commandors, Inc., Raymond Yow,

2   Hong Lip Yow, Reverb Communications, Inc. and Doug Kennedy to their motion for good faith

3   settlement determination, defendants John Tam, Corey Fong and Jamie Yang reply with the

4   memorandum of points and authorities attached hereto.

5        Dated: August 16, 2007              SHUAI & ASSOCIATES

6

7        _____

8        Yee-Horn Shuai, Attorney for Defendants John
         Tam, Jamie Yang, and Corey Fong

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOHN TAM, COREY FONG AND JAMIE YANG'S REPLY TO ALL DEFENDANTS' OPPOSITION

1                        MEMORANDUM OF POINTS AND AUTHORITIES

2                                    I

3                            STATEMENT OF FACTS

4        The above-entitled action arose out of alleged claims made by Plaintiff Activision

5 Publishing, Inc. ("Activision") against former employees and defendants John Tam, Corey Fong

6 and Jamie Yang (collectively "The Tam Defendants"), The Ant Commandos, Inc., Hong Lip

7 Yow and Raymond Yow, (collectively "The TAC Defendants"), and Reverb Communications,

8 Inc. And Doug Kennedy, (collectively "The Reverb Defendants"). Activision claimed that The

9 Tam Defendants were working with Activision's competitor Defendant The Ant Commandos,

10 Inc. ("TAC") and TAC's respective directors during their employment and allegedly

11 misappropriated Activision's trade secret information.

12        Activision filed the complaint on January 18, 2007. On or about March 27, 2007,

13 Activision and defendants John Tam and Corey Fong executed the Confidential Settlement

14 Agreement in this matter, and entered into a Consent Judgment and Permanent Injunction. On or

15 about April 11, 2007, Activision and Jamie Yang executed the Confidential Settlement

16 Agreement in this matter, and entered into a Consent Judgment and Permanent Injunction.

17        Before the Tam Defendants reached the settlement with Activision, the Tam Defendants

18 had invited The TAC Defendants and The Reverb Defendants to join in the negotiation with

19 Activision to reach a global settlement. However, the TAC Defendants flatly rejected the idea,

20 and the Reverb Defendants were not supportive of such an idea. The Tam Defendants were all

21 salaried employees, i.e., hired hand living on salaries and not entrepreneurs. John Tam and

22 Corey Fong have families to care for, and Jamie Yang has serious health problems. None of

23 them could afford the attorneys' fees to litigate this matter. In fact, for the short period of time

24 that they defended the instant action and the settlement payments, their savings were

25 substantially depleted. The Tam Defendants had no choice but to accept whatever the lowest

26 amounts that plaintiffs Activision would accept to settle this matter.

27        The TAC Defendants did not reach the settlement agreement with plaintiff Activision

28 until June 25, 2007, which is about 3 months later than the settlements between the Tam

1  Defendants and Activision.  This time, the TAC Defendants again refused the Reverb

2  Defendants' proposal to jointly negotiate the settlement with Activision, despite the fact that the

3  counsel for the Reverb Defendants had indicated to counsel for the TAC Defendants of such an

4  desire, and that fact that Activision had told the counsel for TAC Defendants its willingness to

5  settle with both the TAC Defendants and the Reverb Defendants for an amount that is only about

6  $75,000 more than the amount in the final settlement between the TAC Defendants and

7  Activision.  The TAC Defendants simply refused or failed to pass to the Reverb Defendants the

8  global settlement offer made by Activision, and unilaterally entered into the settlement with

9  Activision leaving the Reverb Defendants in the cold.

10      There is really no inconsistency between the statement in the former counsel Richard

11  Cauley's declaration and the amount of the damages acknowledged in the CONFIDENTIAL

12  SETTLEMENT AGREEMENTS.  In the Settlement Agreements, the Tam Defendants merely

13  ACKNOWLEDGED the damage claims of Activision without AGREEING to such claims.

14      The acknowledgment that the damages sustained by Activision to be in excess of

15  $750,000 is agreed to be kept confidential and will not have any evidentiary value and, thus, will

16  not in any way help Activision in its action against the other defendants.

17      All of the Tam Defendants are living on wages and need to support their families.  Their

18  financial conditions are set forth in their declaration in support of this Reply.

19      The TAC Defendants and the Reverb Defendants have not proffered any evidence of

20  collusion, fraud, or tortious conduct between the settler and the plaintiff aiming at making non-

21  settling parties pay more than their fair share.

22      In the TAC Defendants' motion for good faith settlement determination, the TAC

23  Defendants assert that, THE SETTLEMENT OF THE PARTIES WAS REACHED IN GOOD

24  FAITH, BECAUSE THE SETTLING DEFENDANTS ARE PROVIDING THE PLAINTIFF

25  WITH PAYMENT OF AN AMOUNT THAT IS FAIR CONSIDERING THE SIX FACTORS

26  SET FORTH IN TECH-BUILT V. WOODWARD."  (See TAC Defendants' Ps & As, P3, L25 to

27  P7, L10.)

28  ////////////

II

THIS COURT HAS AUTHORITY TO AND SHOULD MAKE A

DETERMINATION THAT THE SETTLEMENT WAS MADE IN

GOOD FAITH UNDER C.C.P. SECTION 877.6

In *Tech-Bilt, Inc. v. Woodward-Clyde & Associates*, 38 Cal. 3d 488, 499 (1985), the court concluded that a trial court may inquire as to whether the amount of the settlement is within a reasonable "ballpark" range of the settling tortfeasor's proportional share of comparative liability for the alleged damages. This assessment is to be made based on the facts available at the time of settlement. The court outlined factors to be assessed in making the good faith determination as follows:

> The intent and policies underlying § 877.5 require that a number of
> factors be taken into account, including a rough approximation of
> the plaintiff's total recovery and the settlor's proportionate liability,
> the amount paid in settlement, the allocation of settlement proceeds
> among plaintiffs, and a recognition that a settlor should pay less in
> settlement than he would if he were found to have liability at trial.
> Other relevant considerations include the financial condition and
> insurance policy limits of the settling defendants as well as the
> existence of collusion, fraud, or tortious conduct aimed to injure
> the interest of non-settling defendants. Finally, practical
> considerations obviously required that the evaluation be made on
> the basis of information available at the time of settlement.

Id. at 499.

In the instant case, the facts clearly reflect that the settlement by the parties is in good faith and consistent with the considerations outlined in the *Tech-Bilt* decision.

The Tam Defendants wanted to reach settlement with Activision because they did not and do not have the financial ability to litigate this matter. They invited the TAC Defendants and the Reverb Defendants to join in the negotiation for a global settlement with Activision. Such

1   invitation was rejected by the TAC Defendants and unsupported by the Reverb Defendants.

2   They had no choice but to proceed the settlement negotiation with Activision without the other

3   defendants.

4          The Tam Defendants reached the settlement with Activision at a very early stage of the

5   action.  In fact, in less than 2 months after Activision's filing of the complaint, the Tam

6   Defendants and Activision reached principal terms of the settlement.  The settlement agreements

7   were not signed until awhile later because it took a long time for the counsel to finalize and for

8   the parties to execute the agreements and the consent judgments.  The civil litigation system is

9   designed to encourage settlement among the parties.  The earlier the settlement is reached, the

10  more savings there are of the costs to the parties, the court system and the society.

11         The acknowledgment of Activision's damages does not have any evidentiary value and

12  thus will not in any way help Activision's action against any of the other defendants, i.e., the

13  TAC Defendants and the Reverb Defendants.  Therefore, such recitations in the confidential

14  settlement agreements should not and cannot infer any collusion, fraud, or tortious conduct

15  between the settler and the plaintiff aimed at making non-settling parties pay more than their fair

16  share.  In fact, at the time when the TAC Defendants reached and entered the settlement

17  agreement with Activision, they did not know any of the terms and conditions of the settlement

18  agreements between the Tam Defendants and Activision.  That also means, the settlement

19  between TAC Defendants and Activision was not affected in any way by the settlements between

20  the Tam Defendants and Activision.

21         Had the counsel of the TAC Defendants not repeatedly threatened to seeking indemnity

22  and contribution from the Tam Defendants, the Tam Defendants would not have filed the motion

23  for good faith determination.  Had the Tam Defendants not filed the motion for good faith

24  determination, none of the other defendants would have known the terms and conditions of said

25  settlement agreements.

26         The Tam Defendants have proffered additional evidence to show their current financial

27  conditions.  The financial conditions of the Tam Defendants clearly support their request for a

28  good faith settlement determination.  Defendant Jamie Yang used a big chunk of her little

1   savings to pay the $17,500 in one installment in April 2007.  Defendants John Tam and Corey

2   Fong could not and cannot do so and have to make payments on an installment basis, i.e., $333

3   per month by John Tam and $445 per month by Corey Fong.  If any of them was going to

4   continue this litigation, he/she would soon need to borrow money against the equity of his/her

5   house increasing his/her monthly mortgage payments beyond his/her means.  When his/her

6   income is insufficient to meet all the debts, his/her house may go in default and be foreclosed.

7           Furthermore, none of the opposing defendants has proffered any evidence that this

8   settlement was the result of collusion, fraud or tortious conduct against the non-settling

9   defendants/cross-defendants.  There is no evidence whatsoever that the agreement was based on

10  anything other than an arms-length negotiation following investigation by all parties concerned.

11  All the TAC Defendants and Reverb Defendants have clearly failed the burden of proof to show

12  that the settlement between the Tam Defendants and Activision lacks good faith.

13          In the TAC Defendants' motion for good faith settlement determination, the TAC

14  Defendants assert that, "THE SETTLEMENT OF THE PARTIES WAS REACHED IN GOOD

15  FAITH, BECAUSE THE SETTLING DEFENDANTS ARE PROVIDING THE PLAINTIFF

16  WITH PAYMENT OF AN AMOUNT THAT IS FAIR CONSIDERING THE SIX FACTORS

17  SET FORTH IN TECH-BUILT V. WOODWARD." (See TAC Defendants' Ps & As, P3, L25 to

18  P7, L10.)  If the TAC Defendants assert that the settlement between them and Activision is

19  FAIR, how could they argue that the settlement between the Tam Defendants and Activision is

20  NOT FAIR or not in good faith?

21          Further, Code of Civil Procedure §§ 877 and 877.6(c) applies to those defendants who act

22  in concert to cause an injury, and include joint and concurrent and successive tortfeasors.  In

23  *Turcon Construction, Inc. v. Norto-Valliers, Ltd.*, 139 Cal. App. 3d 280, 282 (1983) the court

24  stated:

25                  The clear policy of § 877.6(c) is to encourage settlement by

26                  providing finality to litigation for the settling tortfeasor.  This

27                  policy applies with equal force to all tortfeasors joined in the single

28                  action regardless of whether their acts are successive or

1             contemporaneous.

2                                       III

3                              CONCLUSION

4          Based on the foregoing, it is respectfully requested that the court order:

5          a)      That the proposed settlements between the Tam Defendants and Activision are in

6 good faith pursuant to Code of Civil Procedure § 877.6; and

7          b)      That all future claims against each named party to this action for equitable

8 comparative contribution or partial comparative indemnity, based on comparative negligence or

9 comparative fault (including claims for implied contractual indemnity), be dismissed and are

10 forever barred.

11         Dated: August 16, 2007          SHUAI & ASSOCIATES

12

13                                  _____

14                            Yee-Horn Shuai, Attorney for Defendants John
                           Tam, Jamie Yang, and Corey Fong

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  **Yee-Horn Shuai, Esq.**
   **SHUAI & ASSOCIATES**
2  301 E. Colorado Blvd., Suite 514
   Pasadena, California 91101
3  Tel. (626) 405-0348
   Fax (626) 405-0890
4  Bar No. 104897
   E-mail: yhshuai@gmail.com
5
   Attorney for John Tam, Jamie Yang,
6  and Corey Fong

7
                  UNITED STATES DISTRICT COURT
8
                 NORTHERN DISTRICT OF CALIFORNIA
9

10  ACTIVISION PUBLISHING, INC., a          )
    Delaware corporation,                   ) Case No. C 07-03536 MEJ
11                                          )
                      Plaintiff,            ) **CONFIDENTIAL AND SEALED**
12                                          ) **DECLARATION** OF JOHN TAM IN
      vs.                                   ) SUPPORT OF DEFENDANTS JOHN TAM,
13                                          ) COREY FONG AND JAMIE YANG'S
    JOHN TAM, an individual, JAMIE YANG, an ) REPLY TO ALL OTHER DEFENDANTS'
14  individual, COREY FONG, an individual,  ) OPPOSITIONS TO THEIR MOTION FOR
    DOUG KENNEDY, an individual, HONG YIP   ) ORDER DETERMINING GOOD FAITH
15  LOW, an individual, RAYMOND YOW, an     ) SETTLEMENT AND BARRING OF
    individual, REVERB COMMUNICATIONS,      ) FUTURE CLAIMS AGAINST SETTLING
16  INC., a California corporation, and THE ANT ) PARTIES
    COMMANDOS, INC., a California           )
17  corporation,                            )
                                            )
18                    Defendants.           )
    _____ )
19

20

21                         CONFIDENTIAL

22  CONTAINS MATERIALS DESIGNATED BY ACTIVISION AS CONFIDENTIAL SUBJECT

23  TO A PROTECTIVE ORDER ENTERED IN THIS ACTION.  IT IS NOT TO BE OPENED

24  NOR ARE ITS CONTENTS TO BE DISPLAYED, REVEALED OR MADE PUBLIC,

25                  EXCEPT BY ORDER OF THE COURT.

26

27

28

I, John Tam, declare and say:

1.    I am a defendant in the above captioned action.  This declaration is made upon my own knowledge and if sworn as a witness, I can competently testify to the truth of the facts set forth herein.

2.    As soon as Activision believed that Corey Fong, Jamie Yang and I were doing the things alleged in the complaint, it fired all of us.  While unemployed, the lawyer bills were stacking up on all of us.

3.    Corey Fong, Jamie Yang and I, through Mr. Cauley, had invited all the other defendants to jointly work out a universal settlement with Activision.  However, such invitation was rejected by TAC, Hong Lip Yow and Raymond Yow, and Reverb Communications, Inc. and Doug Kennedy were not supportive of such an idea.  We had no choice but to settle with Activision without them.

4.    I have no idea if what Mr. Richard Cauley said in his declaration is correct, i.e., Activision did not suffer any compensable injury.  However, my understanding is that I would not be able to reach a settlement without acknowledging Activision's damages to be in excess of $750,000, and that Mr. Richard Cauley was only able to change the word "agree" to "acknowledge", i.e., we did not agree but acknowledge that the damages caused to Activision were in excess of $750,000.

5.    In addition, my understanding is that the settlement agreements would be confidential and none of the parties is permitted to disclose the terms of the settlement agreement, and, thus, I believed that such acknowledgment of damages would not and could not be used by Activision as evidence against any of the other defendants.

6.    I had my family to think of and really had no choice but to settle to get out of the legal situations, and to stop the legal bills from adding up.  In fact, I had to borrow $10,000 from my parents to pay the attorney's bills.

7.    I and my wife currently have the following assets and income:

a.    We have approximately $10,000 in the bank accounts.  The little cash we have will drastically change, if I have to further deal with the legal issues.  Any more big hits

1  from legal bills or other things can quickly deplete the amount in my checking & savings

2  account. I was informed that not only TAC, Hong Lip Yow and Raymond Yow filed the

3  opposition to our motion, but also Reverb Communications, Inc. and Douglas Kennedy.

4            b.     We own our own residence. The value of the house is approximately

5  $820,000 with a loan Balance of approximately $500,000. The monthly mortgage payment is

6  $2,500.

7            c.     I am still unemployed, and my family of four depends on my wife's

8  monthly take home pay of $4,700. With the kind of income, we need to support a family of 4

9  (including two infants). If we have to take equity out of our house, this will raise our monthly

10  payments and could potentially put myself and my family out on the streets.

11      8.     My wife and I have borrowed significant funds from family to have cash on hand

12  for mortgage bills etc. and still have the following debts:

13            a.     Balance of approximately $500,000 of home mortgage.

14            b.     $10,000 owed to my parents/

15            c.     $16,000 owed to Activision.

16      9.     Our monthly expenses are: (a) $2,500 for house mortgage , (b) $333 for payment

17  to Activision, (c) $100 for health insurance, (d) $580 for property taxes, (e) $300 for utilities, and

18  (f) at least $700 for other overall living expenses, totaling at least $4,513.

19      10.    I did earned some shares of the RedOctane stock. I sold the stock and received

20  approximately $170,000 in June 2006, and we used the money to pay off our loans and also part

21  of the home mortgage.

22      I declare under penalty of perjury under the laws of the State of California that the

23  foregoing is true and corr

24      Executed on August 15, 2007, at Milpitas, California.

25

26                                    John Tam

27

28

1  **Yee-Horn Shuai, Esq.**
   **SHUAI & ASSOCIATES**
2  301 E. Colorado Blvd., Suite 514
   Pasadena, California 91101
3  Tel. (626) 405-0348
   Fax (626) 405-0890
4  Bar No. 104897
   E-mail: yhshuai@gmail.com
5
   Attorney for John Tam, Jamie Yang,
6  and Corey Fong

7
                    UNITED STATES DISTRICT COURT
8
                  NORTHERN DISTRICT OF CALIFORNIA
9

10  ACTIVISION PUBLISHING, INC., a          )
    Delaware corporation,                   )  Case No. C 07–03536 MEJ
11                                          )
                    Plaintiff,              )
12                                          )  **CONFIDENTIAL AND SEALED**
    vs.                                     )  **DECLARATION** OF COREY FONG IN
13                                          )  SUPPORT OF DEFENDANTS JOHN TAM,
    JOHN TAM, an individual, JAMIE YANG, an )  COREY FONG AND JAMIE YANG'S
14  individual, COREY FONG, an individual,  )  REPLY TO ALL OTHER DEFENDANTS'
    DOUG KENNEDY, an individual, HONG YIP   )  OPPOSITIONS TO THEIR MOTION FOR
15  LOW, an individual, RAYMOND YOW, an     )  ORDER DETERMINING GOOD FAITH
    individual, REVERB COMMUNICATIONS,      )  SETTLEMENT AND BARRING OF
16  INC., a California corporation, and THE ANT )  FUTURE CLAIMS AGAINST SETTLING
    COMMANDOS, INC., a California           )  PARTIES
17  corporation,                            )
                                            )
18                  Defendants.             )
                                            )
19  _____     )

20

21                            CONFIDENTIAL

22  CONTAINS MATERIALS DESIGNATED BY ACTIVISION AS CONFIDENTIAL SUBJECT

23  TO A PROTECTIVE ORDER ENTERED IN THIS ACTION.  IT IS NOT TO BE OPENED

24  NOR ARE ITS CONTENTS TO BE DISPLAYED, REVEALED OR MADE PUBLIC,

25                  EXCEPT BY ORDER OF THE COURT.

26

27

28

I, Corey Fong, declare and say:

1.    I am a defendant in the above captioned action. This declaration is made upon my own knowledge and if sworn as a witness, I can competently testify to the truth of the facts set forth herein.

2.    As soon as Activision believed that John Tam, Jamie Yang and I were doing the things alleged in the complaint, it fired all of us. While unemployed, the lawyer bills were stacking up on all of us.

3.    John Tam, Jamie Yang and I, through Mr. Cauley, had invited all the other defendants to jointly work out a universal settlement with Activision. However, such invitation was rejected by TAC, Hong Lip Yow and Raymond Yow, and Reverb Communications, Inc. and Doug Kennedy were not supportive of such an idea. We had no choice but to settle with Activision without them.

4.    I have no idea if what Mr. Richard Cauley said in his declaration is correct, i.e., Activision did not suffer any compensable injury. However, my understanding is that I would not be able to reach a settlement without acknowledging Activision's damages to be in excess of $750,000, and that Mr. Richard Cauley was only able to change the word "agree" to "acknowledge", i.e., we did not agree but acknowledge that the damages caused to Activision were in excess of $750,000.

5.    In addition, my understanding is that the settlement agreements would be confidential and none of the parties is permitted to disclose the terms of the settlement agreement, and, thus, I believed that such acknowledgment of damages would not and could not be used by Activision as evidence against any of the other defendants.

6.    I had my family to think of and really had no choice but to settle to get out of the legal situations, and to stop the legal bills from adding up.

7.    I applied for unemployment benefit about 2 months after Activision fired us, in an attempt to get some income for my family. However, Activision's VP of HR specifically went through the trouble of blocking my application for unemployment insurance benefits by telling the unemployment department that I do not deserve unemployment insurance because I was fired

1    for gross misconduct, knowing full well that I had a family to take care of. As the result, I did

2    not receive any unemployment insurance benefit or other income during the 6 months that I was

3    out of work.

4          8.      I and my wife currently have the following assets and income:

5              a.      We have approximately $13,000 in the bank across checking and savings

6    accounts. This will drastically change, if I have to further deal with the legal issues. Any more

7    big hits from legal bills or other things can quickly deplete the amount in my checking & savings

8    account. I was informed that not only TAC, Hong Lip Yow and Raymond Yow filed the

9    opposition to our motion, but also Reverb Communications, Inc. and Douglas Kennedy.

10            b.      We own our own residence. The value of the house is approximately

11    $550,000 with a loan Balance of approximately $365,000. The monthly mortgage payment is

12    $2,031.

13            c.      After months of unemployment, I finally found a new job and started work

14    on June 22, 2007, but on a 90-day probation. My annual salary is $80,000, and the take home

15    pay approximately $5,000 per month. With the kind of income, I need to support a family of 5

16    plus one to come in October. If I have to take equity out of my house, this will raise our monthly

17    payments and could potentially put myself and my family out on the streets, especially because

18    my wife is pregnant with our 4th child due in October, and she has quit her job to stay home with

19    the children.

20          9.      My wife and/or I still have the following debts:

21             a.      Balance of approximately $365,000 of house mortgage.

22             b.      $16,000 owed to Activision.

23             c.      Approximately $1,600 on my Wells Fargo credit card.

24         10.      My monthly expenses are: (a) $2,031 for house mortgage , (b) $445 for payment

25    to Activision,(c) $300 for health insurance, (d) approximately $500 for property taxes, (e) $40 for

26    property insurance, (f) $50 for preschool, (g) $150 for auto insurance and (h) approximately

27    $1,400 for other overall living expenses, totaling at least $ 4,916 a month.

28

1    11.    I did receive 10,000 shares of the RedOctane stock. However, when I sold them

2  in June 07, 2006, I reccived only about $26,000 cash after taxes. The money was enough to pay

3  only a tiny fraction of the attorneys' fees.

4        I declare under penalty of perjury under the laws of the State of California that the

5  foregoing is true and correct.

6        Executed on August 10, 2007, at Foster City, California.

7

8                                    _____

9                                    Corey Fong

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1 **Yee-Horn Shuai, Esq.**
   **SHUAI & ASSOCIATES**
2 301 E. Colorado Blvd., Suite 514
   Pasadena, California 91101
3 Tel. (626) 405-0348
   Fax (626) 405-0890
4 Bar No. 104897
   E-mail: yhshuai@gmail.com
5
   Attorney for John Tam, Jamie Yang,
6 and Corey Fong

7
                    UNITED STATES DISTRICT COURT
8
                   NORTHERN DISTRICT OF CALIFORNIA
9

10 ACTIVISION PUBLISHING, INC., a              )
    Delaware corporation,                       )  Case No. C 07-03536 MEJ
11                                              )
                      Plaintiff,                )
12                                              )  **CONFIDENTIAL AND SEALED**
     vs.                                        )  **DECLARATION** OF JAMIE YANG IN
13                                              )  SUPPORT OF DEFENDANTS JOHN TAM,
    JOHN TAM, an individual, JAMIE YANG, an    )  COREY FONG AND JAMIE YANG'S
14  individual, COREY FONG, an individual,      )  REPLY TO ALL OTHER DEFENDANTS'
    DOUG KENNEDY, an individual, HONG YIP      )  OPPOSITIONS TO THEIR MOTION FOR
15  LOW, an individual, RAYMOND YOW, an        )  ORDER DETERMINING GOOD FAITH
    individual, REVERB COMMUNICATIONS,         )  SETTLEMENT AND BARRING OF
16  INC., a California corporation, and THE ANT )  FUTURE CLAIMS AGAINST SETTLING
    COMMANDOS, INC., a California               )  PARTIES
17  corporation,                                )
                                                )
18                    Defendants.               )
                                                )
19  _____  )

20

21                              CONFIDENTIAL

22  CONTAINS MATERIALS DESIGNATED BY ACTIVISION AS CONFIDENTIAL SUBJECT

23  TO A PROTECTIVE ORDER ENTERED IN THIS ACTION.  IT IS NOT TO BE OPENED

24  NOR ARE ITS CONTENTS TO BE DISPLAYED, REVEALED OR MADE PUBLIC,

25                  EXCEPT BY ORDER OF THE COURT.

26

27

28

1    I, Jamie Yang, declare and say:

2    1.    I was a defendant in the above captioned action. This declaration is made upon
3  my own knowledge and if sworn as a witness, I can competently testify to the truth of the facts
4  set forth herein.

5    2.    As soon as Activision believed that John Tam, Corey Fong and I were doing the
6  things alleged in the complaint, it fired all of us. While unemployed, the lawyer bills were
7  stacking up on all of us.

8    3.    John Tam, Corey Fong and I, through Mr. Cauley, had invited all the other
9  defendants to jointly work out a universal settlement with Activision. However, such invitation
10  was rejected by TAC, Hong Lip Yow and Raymond Yow, and Reverb Communications, Inc. and
11  Doug Kennedy were not supportive of such an idea. We had no choice but to settle with
12  Activision without them.

13    4.    I have no idea if what Mr. Richard Cauley said in his declaration is correct, i.e.,
14  Activision did not suffer any compensable injury. However, my understanding is that I would
15  not be able to reach a settlement without acknowledging Activision's damages to be in excess of
16  $750,000, and that Mr. Richard Cauley was only able to change the word "agree" to
17  "acknowledge", i.e., we did not agree but acknowledge that the damages caused to Activision
18  were in excess of $750,000.

19    5.    In addition, my understanding is that the settlement agreements would be
20  confidential and none of the parties is permitted to disclose the terms of the settlement
21  agreement, and, thus, I believed that such acknowledgment of damages would not and could not
22  be used by Activision as evidence against any of the other defendants.

23    6.    John Tam and Corey Fong invited me to join the new venture and I only agreed to
24  **consider** joining the new venture. Due to my heavy traveling and work load and my poor health,
25  I hardly did anything for the planned new venture. However, due to my poor health and lack of
26  financial ability, I had no choice but to settle to get out of the legal situations, and to stop the
27  legal bills from adding up.

28    7.    I have been unemployed since being fired by Activision, and currently have the

1  following assets:

2      a.    I currently have approximately $35,000 in the bank across checking and
3  savings accounts.  In addition to my need to The little money I have in the bank accounts will
4  drastically change, if I have to further deal with the legal issues.  Any more big hits from legal
5  bills or other things can quickly deplete the amount in my checking & savings accounts.  I was
6  informed that not only TAC, Hong Lip Yow and Raymond Yow filed the opposition to our
7  motion, but also Reverb Communications, Inc. and Douglas Kennedy.

8      b.    I own a house with a value of approximately $400,000 and a loan Balance
9  of approximately $375,000.  The monthly mortgage payment is approximately $1,700.

10     c.    I own some shares of stock of Activision with a current value of
11 approximately $17,000.

12  8.    The only major debt I still have is the house mortgage with a balance of
13 approximately $375,000.

14  9.    Due to constant business travel between the US and China and long working
15 hours, I have been seeking medical help for my neck and back problems since October, 2006.
16 My neck and back problems cause me breathing difficulty, chest pain and neck/back/lower back
17 pain.  Other then medication, the doctor ordered me to do physical therapy 2 to 3 times a week.
18 However, as the result of the firing, I lost my health insurance, and the attorneys' bills quickly ate
19 away my savings.  I had to stop all my medical treatments in the US.  In order to continue my
20 medical treatments at reduced financial burden, I decided to move to Taiwan temporarily to stay
21 with my mother and get medical care and treatments because the medical treatments are much
22 cheaper in Taiwan.

23  10.    My monthly expenses are: (a) approximately $1,700 for house mortgage, (b)
24 approximately $500 for property taxes, (c) approximately $300 for insurance, (d) $350 for HOA,
25 (e) approximately $300 medical bills in Taiwan, and (f) approximately $1,000 for other overall
26 living expenses, totaling at least $4,150.  My current savings are only enough to last for 7 to 8
27 months.

28  11.    I did earned some shares of the RedOctane stock.  I sold the stock and received

1   approximately $170,000 in June 2006. The money was used mostly to pay attorneys' fees,

2   Activision settlement payments, my 2nd house mortgage and my daily living expenses.

3        I declare under penalty of perjury under the laws of the State of California that the

4   foregoing is true and correct.

5        Executed on August //th 2007, at Taipei, Taiwan.

6

7                                                           Jamie Yang

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Yee-Horn Shuai, Esq.**
**SHUAI & ASSOCIATES**
301 E. Colorado Blvd., Suite 514
Pasadena, California 91101
Tel. (626) 405-0348
Fax (626) 405-0890
Bar No. 104897
E-mail: yhshuai@gmail.com

Attorney for John Tam, Jamie Yang,
and Corey Fong

UNITED STATES DISTRICT COURT

NORTHEN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ACTIVISION PUBLISHING, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>JOHN TAM, an individual, JAMIE YANG, an individual, COREY FONG, an individual, DOUG KENNEDY, an individual, HONG YIP LOW, an individual, RAYMOND YOW, an individual, REVERB COMMUNICATIONS, INC., a California corporation, and THE ANT COMMANDOS, INC., a California corporation,<br><br>Defendants. | Case No. C 07-03536 MEJ<br><br>DECLARATION OF YEE-HORN SHUAI IN SUPPORT OF DEFENDANTS JOHN TAM, COREY FONG AND JAMIE YANG'S REPLY TO ALL DEFENDANTS' OPPOSITIONS TO THEIR MOTION FOR ORDER DETERMINING GOOD FAITH SETTLEMENT AND BARRING OF FUTURE CLAIMS AGAINST SETTLING PARTIES |

CONFIDENTIAL

CONTAINS MATERIALS DESIGNATED BY ACTIVION AS CONFIDENTIAL SUBJECT

TO A PROTECTIVE ORDER ENTERED IN THIS ACTION.  IT IS NOT TO BE OPENED

NOR ARE ITS CONTENTS TO BE DISPLAYED, REVEALED OR MADE PUBLIC,

EXCEPT BY ORDER OF THE COURT.

YHS/fs/081607/107001 Mtn Good Faith Stmt Determination 01, Reply, Shuai Decl 01.wpd                                    1

DECLARATION OF YEE-HORN SHUAI IN SUPPORT OF DEFENDANTS JOHN TAM, COREY FONG
AND JAMIE YANG'S MOTION FOR ORDER DETERMINING GOOD FAITH SETTLEMENT

I, Yee-Horn Shuai, declare and say:

1.     I am an attorney licensed to practice law in the State of California, and the attorney of record for defendants John Tam, Corey Fong and Jamie Yang.

2.     This declaration is made upon my own knowledge and if sworn as a witness, I can competently testify to the truth of the facts set forth herein.

3.     Before filing the Tam Defendants' motion for good faith settlement determination, I talked to Mr. Trevor Zink, the counsel for Reverb Communications, Inc. and Doug Kennedy on more than one occasions and, on each occasion, he indicated that Reverb Communications, Inc. and Doug Kennedy would not oppose my clients' motion for good faith settlement determination.

4.     On or about June 8, 2007, I notified Mr. Mike Oswald, the counsel for the ACT Defendants, and Mr. Trevor Zink, the counsel for Reverb Defendants, Tam Defendants' intent to seek good faith settlement determination and invited them to join in a stipulation for a mutual waiver of any possible indemnity and contribution claims against each other. Mr. Oswald rejected the idea, and repeated his threat that, "We do intend to seek indemnity from Tam, Fong and (perhaps) Yang." A true and correct copy of the email is attached hereto labeled Exhibit "G".

5.     Had the TAC Defendants' counsel not repeatedly threatened to seeking indemnity from the Tam Defendants, the Tam Defendants would not have filed the motion for good faith determination. Had the Tam Defendants not filed the motion for good faith determination, none of the other defendants would have known the terms and conditions of said confidential settlement agreements.

6.     On or about August 9, 2007, I was quite surprised to receive the opposition papers of the Reverb Defendants. I called Mr. Zink to find out the reason for the about-face. He gave me few reasons and the main reason is that he had expressed to Mr. Oswald his clients' desire to work with the TAC Defendants to negotiate a global settlement with Activision, and that, however, the Mr. Oswald simply ignored his requests and failed to include the Reverb Defendants in the negotiation of the settlement agreement. Mr. Zink said that, in fact, he found

1  out after the TAC Defendants and Activision reached the settlement agreement that Activision
2  had told Mr. Oswald that Activision would settle with both the TAC Defendants and the Reverb
3  Defendants for an amount that is about $75,000 more than the $250,000 amount settled between
4  the TAC Defendants and Activision.

5       I declare under penalty of perjury under the laws of the State of California that the
6  foregoing is true and correct.

7       Executed on August 16, 2007, at Pasadena, California.

8

9  _____
     Yee-Horn Shuai

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF YEE-HORN SHUAI IN SUPPORT OF DEFENDANTS JOHN TAM, COREY FONG
AND JAMIE YANG'S MOTION FOR ORDER DETERMINING GOOD FAITH SETTLEMENT