1  **Yee-Horn Shuai, Esq.**
   **SHUAI & ASSOCIATES**
2  301 E. Colorado Blvd., Suite 514
   Pasadena, California 91101
3  Tel. (626) 405-0348
   Fax (626) 405-0890
4  Bar No. 104897
   E-mail: yhshuai@gmail.com
5
   Attorney for John Tam, Jamie Yang,
6  and Corey Fong

7
                    UNITED STATES DISTRICT COURT
8
                  NORTHERN DISTRICT OF CALIFORNIA
9

10  ACTIVISION PUBLISHING, INC., a
    Delaware corporation,                    ) Case No. C 07-03536 MEJ
11                                           )
                    Plaintiff,               )
12                                           ) REDACTED NOTICE OF MOTION AND
    vs.                                      ) MOTION FOR ORDER DETERMINING
13                                           ) GOOD FAITH SETTLEMENT BETWEEN
    JOHN TAM, an individual, JAMIE YANG, an  ) PLAINTIFF AND DEFENDANTS, JOHN
14  individual, COREY FONG, an individual,   ) TAM, COREY FONG AND JAMIE YANG
    DOUG KENNEDY, an individual, HONG YIP    ) AND BARRING OF FUTURE CLAIMS
15  LOW, an individual, RAYMOND YOW, an      ) AGAINST SETTLING PARTIES;
    individual, REVERB COMMUNICATIONS,       ) MEMORANDUM OF POINTS AND
16  INC., a California corporation, and THE ANT ) AUTHORITIES
    COMMANDOS, INC., a California            )
17  corporation,                             ) Date:  August 30, 2007
                                             ) Time:  10:00 AM
18                  Defendants.              ) Place: Courtroom B, 15ᵗʰ Floor
                                             )
19

20                            CONFIDENTIAL

21  CONTAINS MATERIALS DESIGNATED BY ACTIVISION AS CONFIDENTIAL SUBJECT

22  TO A PROTECTIVE ORDER ENTERED IN THIS ACTION. IT IS NOT TO BE OPENED

23  NOR ARE ITS CONTENTS TO BE DISPLAYED, REVEALED OR MADE PUBLIC,

24                    EXCEPT BY ORDER OF THE COURT.

25  ////

26  ////

27  ////

28

1    TO ALL PARTIES AND TO THEIR RESPECTIVE ATTORNEYS OF RECORD:

2    PLEASE TAKE NOTICE that on August 30, 2007 at 10:00 AM, or as soon thereafter as

3  the matter may be heard, at the courtroom of Judge Maria Elena James, located at 450 Golden

4  Gate Ave., 15th floor, San Francisco, CA 94102, Defendants John Tam, Jamie Yang, and Corey

5  Fong, (collectively "The Tam Defendants"), through their attorneys of record, will move the court

6  pursuant to sections 877 and 877.6 of the Code of Civil Procedure for an order determining that

7  the settlement entered into between The Tam Defendants and Plaintiff Activision Publishing, Inc.

8  is in good faith and further, for an order barring all joint co-tortfeasors from bringing any further

9  or future claims against each party to this action for indemnity and contribution.  This motion will

10  be made and based upon the grounds that the parties have entered into and consummated a

11  settlement in good faith, and that the settlement bars any and all further and future claims by any

12  joint tortfeasors or co-obligors for indemnity or equitable comparative contribution, or partial or

13  comparative indemnity and fault against the settling parties pursuant to Code of Civil Procedure '

14  877.6(c).

15    This motion will be made and based upon this Notice of Motion, the attached

16  Memorandum of Points and Authorities, the Declarations of Richard F. Cauley and Yee-Horn

17  Shuai, and such other and further oral and documentary evidence as may be presented at the

18  hearing of the motion.

19    A courtesy copy of all of this notice and these pleadings will be delivered to the Court's

20  Chambers.

21    Dated: July 16, 2007        SHUAI & ASSOCIATES

22

23    _____
      Yee-Horn Shuai, Attorney for Defendants John Tam,
24    Jamie Yang, and Corey Fong

25

26

27

28

1    MEMORANDUM OF POINTS AND AUTHORITIES

2    I

3    STATEMENT OF FACTS

4    The above-entitled action arose out of alleged claims made by Plaintiff Activision

5    Publishing, Inc. ("Activision") against former employees and defendants John Tam, Corey Fong

6    and Jamie Yang (collectively "The Tam Defendants"), The Ant Commandos, Inc., Hong Lip Yow

7    and Raymond Yow, (collectively "The TAC Defendants"), and Reverb Communications, Inc.

8    And Doug Kennedy, (collectively "The Reverb Defendants"). Activision claimed that The Tam

9    Defendants were working with Activision's competitor Defendant The Ant Commandos, Inc.

10   ("TAC") and TAC's respective directors during their employment and allegedly misappropriated

11   Activision's trade secret information.

12   On or about February 6 and 7, 2007, the depositions of John Tam and Corey Fong took

13   place pursuant to the court's order permitting limited expedited discovery. After the deposition of

14   Mr. Fong, the attorneys and the parties for Activision and The Tam Defendants sat down face-to-

15   face to work out reasonable settlement terms. At the end of those discussions, the parties agreed

16   in principal as to settlement of the matter against defendants John Tam and Corey Fong.

17   Approximately, 3 weeks later the parties agreed to settle the matter as to Jamie Yang as well.

18   On or about March 27, 2007, Activision and defendants John Tam and Corey Fong

19   executed the Confidential Settlement Agreement in this matter, and entered into a Consent

20   Judgment and Permanent Injunction. On or about April 11, 2007, Activision and Jamie Yang

21   executed the Confidential Settlement Agreement in this matter, and entered into a Consent

22   Judgment and Permanent Injunction.

23   Whatever the perceived strength of Activision's claims for liability against the Tam

24   Defendants, Activision never produced any evidence, either formally or informally, that the

25   company had suffered any compensable damages as a result of the actions of any of the

26   defendants, including the Tam Defendants.

27   From the information received as of the time of the settlements between Plaintiff and the

28   Tam defendants, there was no indication that Activision had suffered any compensable injury.

YHS/fs/071607/107001 Redacted Mtn Good Faith Stmt Determination 01.wpd                    1

1    The settlement agreed to between the parties was not entered into with the intent to

2  tortiously injure any of the other parties involved in this lawsuit.  Each of The Tam Defendants'

3  settlement consisted of signing a settlement agreement, with a payment of ████ apiece and

4  signing a consent order, with an injunction against not only using Activision's trade secrets, but

5  also agreeing to additional restrictions on their employment unconnected to any use of any

6  Activision intellectual property.

7    Few months thereafter and after much more extensive wrangling and discoveries, The

8  ACT Defendants also settled with the Activision on June 7, 2007.  Pursuant to said ACT

9  Defendants' Motion for Order for Determination of Good Faith Settlement, they and their counsel

10  all claim the settlement amount to be fair and in rough approximation of Activsion's total

11  recovery and the TAC Defendants' proportionate liability.

12    The Reverb Defendants have repeatedly stated to the Tam Defendants that they do not

13  intend to oppose the Tam Defendants' Motion for Good Faith Settlement Determination.

14                                          II

15            THIS COURT HAS AUTHORITY TO AND SHOULD MAKE A

16            DETERMINATION THAT THE SETTLEMENT WAS MADE IN

17            GOOD FAITH UNDER C.C.P. SECTION 877.6

18    Code of Civil Procedure § 877.6 allows a settling alleged tortfeasor to request that the

19  court grant a motion for good faith settlement, which has the force and effect of barring other

20  alleged joint tortfeasors from any further claims against the settling tortfeasor for claims of partial

21  or total comparative contribution for indemnity based upon comparative negligence or

22  comparative fault principles.

23    In *Tech-Bilt, Inc. v. Woodward-Clyde & Associates*, 38 Cal. 3d 488, 499 (1985), the court

24  concluded that a trial court may inquire as to whether the amount of the settlement is within a

25  reasonable "ballpark" range of the settling tortfeasor's proportional share of comparative liability

26  for the alleged damages.  This assessment is to be made based on the facts available at the time of

27  settlement.  The court outlined factors to be assessed in making the good faith determination as

28  follows:

1         The intent and policies underlying § 877.5 require that a number of

2         factors be taken into account, including a rough approximation of

3         the plaintiff's total recovery and the settlor's proportionate liability,

4         the amount paid in settlement, the allocation of settlement proceeds

5         among plaintiffs, and a recognition that a settlor should pay less in

6         settlement than he would if he were found to have liability at trial.

7         Other relevant considerations include the financial condition and

8         insurance policy limits of the settling defendants as well as the

9         existence of collusion, fraud, or tortious conduct aimed to injure the

10         interest of non-settling defendants.  Finally, practical considerations

11         obviously required that the evaluation be made on the basis of

12         information available at the time of settlement.

13         Id. at 499.

14     In the instant case, the facts clearly reflect that the settlement by the parties is in good faith

15 and consistent with the considerations outlined in the *Tech-Bilt* decision.

16     The parties participated in numerous settlement discussions.  As a result of those efforts, a

17 settlement with Plaintiff and The Tam Defendants was reached.  Due to the confidentiality of the

18 settlement agreement, Tam Defendants can only disclose the settlement amounts under seal.  (See

19 Declaration of Yee-Horn Shuai under seal.)

20     Furthermore, there is no evidence that this settlement was the result of collusion, fraud or

21 tortious conduct against the non-settling defendants/cross-defendants.  There is no evidence that

22 the agreement was based on anything other than an arms-length negotiation following

23 investigation by all parties concerned.

24     Finally, it is presumed that the settlement was made in good faith and it is the burden of

25 the party opposing the motion to present evidence to the effect that this settlement was not made

26 in good faith.  Id. at 499.

27     Further, Code of Civil Procedure §§ 877 and 877.6(c) applies to those defendants who act

28 in concert to cause an injury, and include joint and concurrent and successive tortfeasors.  In

1  *Turcon Construction, Inc. v. Norto-Valliers, Ltd.*, 139 Cal. App. 3d 280, 282 (1983) the court
2  stated:

3         The clear policy of § 877.6(c) is to encourage settlement by

4         providing finality to litigation for the settling tortfeasor.  This policy

5         applies with equal force to all tortfeasors joined in the single action

6         regardless of whether their acts are successive or contemporaneous.

7                                              III

8              A DETERMINATION OF GOOD FAITH SETTLEMENT UNDER

9              C.C.P. § 877.6 BARS ALL CLAIMS FOR CONTRIBUTION OR

10             INDEMNITY ALLEGED BY JOINT CO-TORTFEASORS

11        Further, Code of Civil Procedure §§ 877 and 877.6(c) applies to those defendants who act
12  in concert to cause an injury, and include joint and concurrent and successive tortfeasors.  In
13  *Turcon Construction, Inc. v. Norto-Valliers, Ltd.*, 139 Cal. App. 3d 280, 282 (1983) the court
14  stated:

15        The clear policy of section 877.6(c) is to encourage settlement by providing finality to
16  litigation for the settling tortfeasor. This policy applies with equal force to all tortfeasors joined in
17  the single action regardless of whether their acts are successive or contemporaneous.

18        In the present case, The Tam Defendants are individuals and former employees of
19  Activision.  They did not have any insurance coverage and limited means.  Due to their inability
20  to afford any protracted litigation, The Tam Defendants quickly settled with Activition.  Each of
21  The Tam Defendants' settlement consisted of a payment of ▮▮▮▮ apiece, and signing a consent
22  order, with an injunction against not only using Activision's trade secrets, but also agreeing to
23  additional restrictions on their employment unconnected to any use of any Activision intellectual
24  property.

25        After several more months of wrangling and discoveries, The ACT Defendants also settled
26  with Activision for an amount that should be kept confidential.  Nevertheless, in the Motion for
27  Order for Determination of Good Faith Settlement, the ACT Defendants do go through and
28  analyze each and every one of the factors for a good faith settlement determination, and claim the

1   settlement amount to be fair and in rough approximation of Activision's total recovery and the

2   TAC Defendants' proportionate liability.

3       As the result, there is no doubt that the settlement agreements between Activision and the

4   Tam Defendants were clearly entered in good faith, and any party asserting lack of good faith shall

5   have the burden of proof on that issue.

6                                           IV

7                                    CONCLUSION

8       Plaintiff and The Tam Defendants have agreed to settle this action for complete resolution

9   of any and all outstanding issues. There is no evidence of any collusion or other tortious or

10  injurious conduct on behalf of any settling parties.

11      This settlement clearly conforms with the factors set forth in *Tech-Bilt*. The payments are

12  clearly within their proportionate share of liability based on the facts known at the time of

13  settlement. There is no evidence of collusion or fraud. Rather, this settlement is the result of

14  ongoing discussions between all parties in this action.

15      Based on the foregoing, it is respectfully requested that the court order:

16      a)    That the proposed settlement between the parties is in good faith pursuant to Code

17  of Civil Procedure § 877.6; and

18      b)    That all future claims against each named party to this action for equitable

19  comparative contribution or partial comparative indemnity, based on comparative negligence or

20  comparative fault (including claims for implied contractual indemnity), be dismissed and are

21  forever barred.

22      Dated: July 16, 2007                SHUAI & ASSOCIATES

23

24

25                                          _____
                                            Yee-Horn Shuai, Attorney for Defendants John Tam,
26                                          Jamie Yang, and Corey Fong

27

28

1  **Yee-Horn Shuai, Esq.**
   **SHUAI & ASSOCIATES**
2  301 E. Colorado Blvd., Suite 514
   Pasadena, California 91101
3  Tel. (626) 405-0348
   Fax (626) 405-0890
4  Bar No. 104897
   E-mail: yhshuai@gmail.com
5
   Attorney for John Tam, Jamie Yang,
6  and Corey Fong

7
                    UNITED STATES DISTRICT COURT
8
                    NORTHERN DISTRICT OF CALIFORNIA
9

10  ACTIVISION PUBLISHING, INC., a                    )
    Delaware corporation,                             )  Case No. C 07-03536 MEJ
11                                                     )
                        Plaintiff,                     )  REDACTED DECLARATION OF
12                                                     )  RICHARD F. CAULEY IN SUPPORT OF
    vs.                                                )  MOTION FOR ORDER DETERMINING
13                                                     )  GOOD FAITH SETTLEMENT BETWEEN
    JOHN TAM, an individual, JAMIE YANG, an            )  PLAINTIFF AND DEFENDANTS, JOHN
14  individual, COREY FONG, an individual,             )  TAM, COREY FONG AND JAMIE YANG
    DOUG KENNEDY, an individual, HONG YIP              )  AND BARRING OF FUTURE CLAIMS
15  LOW, an individual, RAYMOND YOW, an                )  AGAINST SETTLING PARTIES
    individual, REVERB COMMUNICATIONS,                 )
16  INC., a California corporation, and THE ANT        )  Date:  August 30, 2007
    COMMANDOS, INC., a California                      )  Time:  10:00 AM
17  corporation,                                       )  Place:  Courtroom B, 15th Floor
                                                       )
18                        Defendants.                  )
                                                       )
19

20                              CONFIDENTIAL

21  CONTAINS MATERIALS DESIGNATED BY ACTIVISION AS CONFIDENTIAL SUBJECT

22  TO A PROTECTIVE ORDER ENTERED IN THIS ACTION.  IT IS NOT TO BE OPENED

23  NOR ARE ITS CONTENTS TO BE DISPLAYED, REVEALED OR MADE PUBLIC,

24                      EXCEPT BY ORDER OF THE COURT.

25

26

27

28

DECLARATION OF RICHARD F. CAULEY IN SUPPORT OF DEFENDANTS JOHN TAM, COREY FONG
AND JAMIE YANG'S MOTION FOR ORDER DETERMINING GOOD FAITH SETTLEMENT

I, Richard F. Cauley, declare as follows:

1.       I am an attorney at law duly licensed to practice before all courts of the State of California and am a shareholder in the law firm of Wang, Hartmann & Gibbs, PC, former attorneys of record for Defendants John Tam, Corey Fong and Jamie Yang, (collectively "The Tam Defendants"), in the above-entitled actions. I participated in the settlement negotiations between Plaintiff and The Tam Defendants. As such, I have personal knowledge of the facts stated herein and if called upon as a witness, I could and would competently testify to the below facts which are personally known to me.

2.       The above-entitled action consisted essentially of claims for trade secret misappropriation and breach of contract brought by Plaintiff against its former employees The Tam Defendants.

3.       To avoid further litigation costs, the Plaintiff and The Tam Defendants agreed to a settlement of this matter; the settlements reached were negotiated and reached in good faith and were not the result of collusion, subterfuge or fraud.. Whatever the perceived strength of Activision's claims for liability against the Tam Defendants, Activision never produced any evidence, either formally or informally, that the company had suffered any compensable damages as a result of the actions of any of the defendants, including the Tam Defendants. This was not surprising, in light of the fact that, by the time the defendants agreed to the injunctive relief sought by Activision which stopped their allegedly infringing activities, the defendants had done nothing to advance the alleged "plot" to compete against Activision other than conduct a couple of meetings and pick a name for their prospective new company. From the information I received as of the time of the settlements between Plaintiff and the Tam defendants, there was no indication that Activision had suffered any compensable injury. The settlement agreed to between the parties was not entered into with the intent to tortiously injure any of the other parties involved in this lawsuit. Each of The Tam Defendants' settlement consisted of signing a settlement agreement, with a payment of $▮▮▮ apiece and signing a consent order, with an injunction against not only using Activision's trade secrets, but also agreeing to additional restrictions on their employment unconnected to any use of any Activision intellectual property.

YHS/fs//107001 Redacted Mtn Good Faith Stmt Determination 01, Cauley Decl-2.wpd                                              2

DECLARATION OF RICHARD F. CAULEY IN SUPPORT OF DEFENDANTS JOHN TAM, COREY FONG
AND JAMIE YANG'S MOTION FOR ORDER DETERMINING GOOD FAITH SETTLEMENT

1  Copies of these settlement agreements and consent orders are annexed hereto as Exhibits A

2  through F.

3          4.      Given the relatively large cash payment by these defendants ($███ all

4  together), the restrictions on their future employment (over and above any agreement not to use

5  Activision intellectual property) and the minimal actual damages incurred by Activision, it is

6  clear that the settlement of the Tam Defendants far exceeds their proportional liability to

7  Activision.

8          I declare under penalty of perjury under the laws of the State of California that the

9  foregoing is true and correct.  Executed on August 16, 2007 at Newport Beach , California.

10

11

12                                              Richard F. Cauley

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

YHS/fs//107001 Redacted Mtn Good Faith Stmt Determination 01, Cauley Decl-2.wpd                                3

DECLARATION OF RICHARD F. CAULEY IN SUPPORT OF DEFENDANTS JOHN TAM, COREY FONG
AND JAMIE YANG'S MOTION FOR ORDER DETERMINING GOOD FAITH SETTLEMENT

1 | **Yee-Horn Shuai, Esq.**
  | **SHUAI & ASSOCIATES**
2 | 301 E. Colorado Blvd., Suite 514
  | Pasadena, California 91101
3 | Tel. (626) 405-0348
  | Fax (626) 405-0890
4 | Bar No. 104897
  | E-mail: yhshuai@gmail.com
5 |
  | Attorney for John Tam, Jamie Yang,
6 | and Corey Fong

7 |

8 |                    UNITED STATES DISTRICT COURT

9 |                  NORTHERN DISTRICT OF CALIFORNIA

10 | ACTIVISION PUBLISHING, INC., a
   | Delaware corporation,                          Case No. C 07-03536 MEJ
11 |
   |                        Plaintiff,
12 |                                                 REDACTED DECLARATION OF YEE-
   | vs.                                            HORN SHUAI IN SUPPORT OF MOTION
13 |                                                 FOR ORDER DETERMINING GOOD
   | JOHN TAM, an individual, JAMIE YANG, an         FAITH SETTLEMENT BETWEEN
14 | individual, COREY FONG, an individual,          PLAINTIFF AND DEFENDANTS, JOHN
   | DOUG KENNEDY, an individual, HONG YIP           TAM, COREY FONG AND JAMIE YANG
15 | LOW, an individual, RAYMOND YOW, an             AND BARRING OF FUTURE CLAIMS
   | individual, REVERB COMMUNICATIONS,             AGAINST SETTLING PARTIES
16 | INC., a California corporation, and THE ANT
   | COMMANDOS, INC., a California                   Date:   August 30, 2007
17 | corporation,                                    Time:   10:00 AM
   |                                                 Place:  Courtroom B, 15th Floor
18 |                        Defendants.

19 |

20 |                            CONFIDENTIAL

21 | CONTAINS MATERIALS DESIGNATED BY ACTIVISION AS CONFIDENTIAL SUBJECT

22 | TO A PROTECTIVE ORDER ENTERED IN THIS ACTION. IT IS NOT TO BE OPENED

23 | NOR ARE ITS CONTENTS TO BE DISPLAYED, REVEALED OR MADE PUBLIC,

24 |                    EXCEPT BY ORDER OF THE COURT.

25 | ////

26 | ////

27 | ////

28 |

DECLARATION OF YEE-HORN SHUAI IN SUPPORT OF DEFENDANTS JOHN TAM, COREY FONG
AND JAMIE YANG'S MOTION FOR ORDER DETERMINING GOOD FAITH SETTLEMENT

1    I, Yee-Horn Shuai, declare and say:

2    1.    I am an attorney licensed to practice law in the State of California, and the
3    attorney of record for defendants John Tam, Corey Fong and Jamie Yang.

4    2.    This declaration is made upon my own knowledge and if sworn as a witness, I can
5    competently testify to the truth of the facts set forth herein.

6    3.    On or about February 6 and 7, 2007, the depositions of John Tam and Corey Fong
7    took place pursuant to the court's order permitting limited expedited discovery. After the
8    deposition of Mr. Fong, the attorneys and the parties for Activision and The Tam Defendants sat
9    down face-to-face to work out reasonable settlement terms. At the end of those discussions, the
10   parties agreed in principal as to settlement of the matter against defendants John Tam and Corey
11   Fong. Approximately, 3 weeks later the parties agreed to settle the matter as to Jamie Yang as
12   well.

13   4.    On or about March 27, 2007, Activision and defendants John Tam and Corey
14   Fong executed the Confidential Settlement Agreement in this matter, and entered into a Consent
15   Judgment and Permanent Injunction. On or about April 11, 2007, Activision and Jamie Yang
16   executed the Confidential Settlement Agreement in this matter, and entered into a Consent
17   Judgment and Permanent Injunction.

18   5.    On or about June 8, 2007, I notified counsel for the ACT Defendants and the
19   Reverb Defendants The Tam Defendants' intent to seek good faith settlement determination and
20   invited them to join in a stipulation for a mutual waiver of any possible indemnity and
21   contribution claims against each other. Counsel for ACT Defendants flatly rejected the idea.
22   However, counsel for the Reverb Defendants told me at least twice that his clients did not intend
23   to oppose such a motion.

24   ////////

25   /////////

26   ////////

27   /////////

28   /////////

DECLARATION OF YEE-HORN SHUAI IN SUPPORT OF DEFENDANTS JOHN TAM, COREY FONG
AND JAMIE YANG'S MOTION FOR ORDER DETERMINING GOOD FAITH SETTLEMENT

1    I declare under penalty of perjury under the laws of the State of California that the

2    foregoing is true and correct.

3        Executed on July 16, 2007, at Pasadena, California.

4

5
                                            _____
6                                            Yee-Horn Shuai

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

YHS/fs/071607/107001 Redacted Mtn Good Faith Stmt Determination 01, Shuai Decl 02.wpd                    3

EXHIBIT B

EXHIBIT A

# EXHIBIT C





Serd No.-55-6

```
1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT
9             CENTRAL DISTRICT OF CALIFORNIA
10
11  ACTIVISION PUBLISHING, INC., a        Case No. CV 07-00464 PA (Ex)
12  Delaware corporation,
13              Plaintiff,
14                                         [PROPOSED] CONSENT
15        v.                               JUDGMENT AND PERMANENT
                                           INJUNCTION AS TO
16  JOHN TAM, an individual, JAMIE         DEFENDANTS JOHN TAM
    YANG, an individual, COREY FONG,       AND COREY FONG
17  an individual, DOUG KENNEDY, an
    individual, HONG LIP YOW, an
18  individual, RAYMOND YOW, an
    individual, REVERB
19  COMMUNICATIONS, INC., a
    California corporation, and THE ANT
20  COMMANDOS, INC., a California
    corporation,
21
              Defendants.
22
23
24
25
26
27
28
```

LA1-2856960v1



1    WHEREAS plaintiff Activision Publishing, Inc. ("Activision") and
2    defendants John Tam ("Tam"), and Corey Fong ("Fong") (collectively
3    "Defendants") have agreed in a separate confidential agreement to settlement of the
4    matters in issue between them and to entry of this Consent Judgment and
5    Permanent Injunction, it is hereby ORDERED, ADJUDGED, AND DECREED
6    THAT:

7        1.    Activision alleged claims against Tam and Fong for: (1) copyright
8    infringement under 17 U.S.C. § 501, *et seq.*; (2) violation of Section 43(a) of the
9    Lanham Act under 15 U.S.C. § 1125(a); (3) violation of the Computer Fraud and
10   Abuse Act pursuant to 18 U.S.C. §§ 1030(a)(4) and (a)(5)(B); (4) violation of
11   California Penal Code § 502; (5) misappropriation of trade secrets under California
12   Civil Code §§ 3426, *et seq.*; (6) misappropriation of confidential information; (7)
13   breach of contract; (8) breach of duty of loyalty and fiduciary duty; (9) statutory
14   unfair competition under California Business and Professions Code § 17200, *et*
15   *seq.*; (10) common law unfair competition; and (11) conversion.

16       2.    This Court has jurisdiction over all of the parties in this action and
17   over the subject matter in issue based on 28 U.S.C. §§1331, 1338(a) and 1367(a), as
18   well as 15 U.S.C. § 1121(a) and 18 U.S.C. § 1030(g).  This Court further has
19   continuing jurisdiction to enforce the terms and provisions of this Consent
20   Judgment and Permanent Injunction.  Venue is also proper in this Court pursuant to
21   28 U.S.C. §§1391(b).

22       3.    Plaintiff Activision is a Delaware corporation, having its principal
23   place of business at 3100 Ocean Park Boulevard, Santa Monica, California 90405.

24       4.    Defendant Tam, an individual who resides in Milpitas, California, was
25   until recently an employee of Activision.

26       5.    Defendant Fong, an individual who resides in Foster City, California,
27   was until recently an employee of Activision.

28

LAI-2856960v1
-2-

1    6.    Tam and Fong communicated with Doug Kennedy ("Kennedy"),
2    Reverb Communications, Inc. ("Reverb"), The Ant Commandos ("TAC"), Hong
3    Lip Yow ("H. Yow") and Raymond Yow ("R. Yow") to form a company, referred
4    to initially as Hourglass Interactive and then, ultimately, Lodestone Entertainment,
5    Inc., to compete with Activision using Activision's confidential and proprietary
6    information that Tam and Fong had obtained from Activision. (Hereinafter,
7    Defendants' contemplated business venture is referred to as "Lodestone"). Through
8    Lodestone, Defendants planned to sell a video game ("Defendants' Game") in
9    competition with Activision's award-winning rhythm based music games called
10   Guitar Hero™ and Guitar Hero II™ (collectively the "Guitar Hero™ franchise").

11   7.    Activision is the owner of the copyrights in the audiovisual material
12   associated with the Guitar Hero™ franchise, which copyrights have been
13   registered, including Copyright Registration PA-1-322-764 for Guitar Hero™. This
14   copyright is valid and enforceable throughout the United States.

15   8.    Lodestone intended to target a confidential and proprietary Activision
16   corporate opportunity for the Guitar Hero™ franchise involving a certain
17   confidential third party (the "Third Party")[1] that was known to Tam and Fong by
18   virtue of their employment with Activision.

19   9.    Tam, working with Fong, directed an Activision employee and
20   Activision independent contractors to develop, at Activision's expense, a demo of
21   Defendants' Game (the "Tam Demo") for use by Defendants. Defendants
22   reproduced, displayed, published, distributed, sold and/or promoted the Tam Demo
23   without Activision's authorization or consent.

24
25

26   _____
     [1] Because the identity of the Third Party is Activision confidential and trade
27   secret information, the name of this party is not disclosed in this Consent Judgment
     and Permanent Injunction but may be found in Appendix B to the confidential
28   Settlement Agreement between the parties.

1    10.    Defendants intended to and did use the Tam Demo, to solicit partners

2    and funds for Lodestone. The Defendants' decision to target and/or partner with

3    the Third Party was based on Activision's confidential and trade secret information.

4    11.    Defendants each signed Activision's Form of Employee Proprietary

5    Information Agreement ("Proprietary Information Agreement") obligating

6    themselves to hold in strict confidence, and not use or disclose except for the

7    benefit of Activision, Activision Proprietary Information.[2] Fong and Tam each

8    explicitly acknowledge and agree that the Proprietary Information Agreements they

9    signed constitute valid and binding agreements. Fong and Tam also each explicitly

10   acknowledge and agree that Activision Proprietary Information includes, but is not

11   limited to the following confidential and trade secret information, which derives

12   independent economic value from not being generally known to the public or to

13   other persons who can obtain economic value from its disclosure or use:

14

15

16   [2] "Activision Propriety Information" includes all Activision confidential and
     trade secret information and, as set forth in the Employee Proprietary Information

17   Agreement signed by Tam, Yang and Fong, specifically includes:

18        any and all trade secrets, confidential knowledge, data or any
          other proprietary information pertaining to any business of the
19        Company or any of its clients, customers or consultants,
          licensees or affiliates. By way of illustration but not limitation,
20        "Proprietary Information" includes (a) inventions, ideas,
          improvements, discoveries, trade secrets, processes, data,
21        programs, knowledge, know-how, designs, techniques, formulas,
          test data, computer code, other works of authorship and designs
22        whether or not patentable, copyrightable, or otherwise protected
          by law, and whether or not conceived of or prepared by me,
23        either alone   or jointly with others (hereinafter collectively
          referred to as "Inventions"); (b) information regarding research,
24        development, new products and services, marketing plans and
          strategies, merchandising and selling, business plans, strategies,
25        forecasts, projections, profits, investments, operations,
          financings, records, budgets and unpublished financial
26        statements, licenses, prices and costs, suppliers and customers;
          and (c) identity, requirements, preferences, practices and
27        methods of doing business of specific parties with whom the
          Company transacts business, and information regarding the
28        skills and compensation of other employees of the Company and
          independent contractors performing services for the Company.

LA1-2856960v1

- 4 -

1   (a) Financial information related to the Guitar Hero™ franchise,
2      including but not limited to, profit and loss information, cost
3      information, expenses, contract terms, sales numbers and
4      forecasts, information contained in the Guitar Hero II™ Budget
5      Summary, information contained in the Guitar Hero II™ North
6      American Xbox 360™ Strategy PowerPoint, information
7      contained in the Variable Sales & Marketing spreadsheet,

8   (b) Marketing information related to the Guitar Hero™ franchise,
9      including but not limited to marketing partners, contract terms,
10      marketing categories, information contained in the Guitar
11      Hero™ franchise plans, and identified growth areas for the
12      Guitar Hero™ franchise,

13   (c) Product information related to the Guitar Hero™ franchise,
14      including but not limited to product design, such as the design
15      for the Guitar Hero II™ Xbox 360™ controller design, future
16      product ideas and designs,

17   (d) Profit and loss statements developed by Tam, Fong and/or Yang
18      which were derived from Guitar Hero™ financial information,
19      including such statements developed for Hourglass Interactive
20      and/or Lodestone Entertainment,

21   (e) Information related to music licensing and in game advertising
22      for the Guitar Hero™ franchise, including but not limited to
23      contract terms, identities of possible future songs and artists to
24      include, and identities of partners for licensing or in game
25      advertising, and

26   (f) Vendor information related to the Guitar Hero™ franchise,
27      including but not limited to vendor identities and contact lists,
28      vendor pricing, and vendor contract terms.

1        12.    Tam entered into a binding and valid employment agreement with

2    Activision. This contract required that, among other things, the term of Tam's

3    employment would continue until May 31, 2007, and that during that time he would

4    not work for any Activision competitor. TAC is an Activision competitor.

5        13.    THEREFORE, it is hereby further ORDERED, ADJUDGED AND

6    DECREED THAT:

7    A.    John Tam and Corey Fong, their, officers, directors, agents, servants,

8        employees, attorneys, and those in active concert or participation with any

9        of them who receive actual notice of this injunction by personal service or

10        otherwise ARE RESTRAINED AND ENJOINED from:

11        1.    Copying, distributing, displaying or using any content derived or

12            copied from the Guitar Hero™ or Guitar Hero II™ video game;

13        2.    Copying, distributing, displaying or using the game demo created by

14            John Tam based on Guitar Hero™ and StepMania, screenshots of

15            which are attached hereto as **Exhibit 1** (the "Tam Demo") and/or

16            copying, distributing, displaying or using any content derived or copied

17            therefrom;

18        3.    Manufacturing, selling, offering for sale, advertising or distributing the

19            Tam Demo, or any rhythm based video game including or derived from

20            any Activision Proprietary Information;

21        4.    Taking any steps to develop, market, manufacture, sell or distribute

22            any guitar, synthesizer or drum based video games, including any

23            peripherals for those games, for a period of one (1) year;

24        5.    Using, disclosing, transferring, distributing or reproducing any

25            Activision Proprietary Information and any materials or information

26            derived therefrom, including but not limited to, using it in connection

27            with developing a music or rhythm based game, or in starting a

28

LAI-2856960v1

- 6 -

1   company, said Activision Proprietary Information including but not

2   limited to:

3   •   Financial information related to the Guitar Hero™ franchise,

4       including but not limited to, profit and loss information, cost

5       information, expenses, contract terms, sales numbers and

6       forecasts, information contained in the Guitar Hero II™ Budget

7       Summary, information contained in the Guitar Hero II™ North

8       American Xbox 360™ Strategy PowerPoint, information

9       contained in the Variable Sales & Marketing spreadsheet,

10  •   Marketing information related to the Guitar Hero™ franchise,

11      including but not limited to marketing partners, contract terms,

12      marketing categories, information contained in the Guitar

13      Hero™ franchise plans, and identified growth areas for the

14      Guitar Hero™ franchise,

15  •   Product information related to the Guitar Hero™ franchise,

16      including but not limited to product design, such as the design

17      for the Guitar Hero II™ Xbox 360™ controller design, future

18      product ideas and designs,

19  •   Profit and loss statements developed by John Tam, Corey Fong

20      and/or Jamie Yang which were derived from Guitar Hero™

21      financial information, including such statements developed for

22      Hourglass Interactive and/or Lodestone Entertainment,

23  •   Information related to music licensing and in game advertising

24      for the Guitar Hero™ franchise, including but not limited to

25      contract terms, identities of possible future songs and artists to

26      include, and identities of partners for licensing or in game

27      advertising, and

28

1          •    Vendor information related to the Guitar Hero™ franchise,

2             including but not limited to vendor identities and contact lists,

3             vendor pricing, and vendor contract terms;

4    6.    Taking any steps to develop, market, manufacture, sell or distribute

5       any guitar controller intended to be compatible with Activision's

6       Guitar Hero II™ game for the Microsoft Xbox 360™ game console

7       until six months after Activision commercially releases the Activision

8       Guitar Hero II™ game for the Microsoft Xbox 360™ game console;

9    7.    Taking any steps to develop, market, manufacture, sell or distribute

10      any of the confidential peripheral devices disclosed in Appendix A

11      until six months after Activision commercially releases such a device;

12    8.    Disclosing, transferring, distributing, reproducing or using any of the

13      business plans developed by Jamie Yang, Corey Fong or John Tam or

14      otherwise derived from those individuals for The Ant Commandos or

15      for the business venture referred to variously as Hourglass Interactive

16      and Lodestone Entertainment;

17    9.    Soliciting Activision employees for a period of one (1) year;

18    10.   Soliciting any of the Activision partners and growth areas identified in

19      Appendix B to the confidential Settlement Agreement for a period of

20      one (1) year; and

21    11.   Soliciting any of the manufacturing vendors identified in Appendix C

22      to the confidential Settlement Agreement for a period of one (1) year.

B.  Defendants shall, within five (5) days of entry of this Consent Judgment and Permanent Injunction, deliver the documents and things listed below in their possession, custody or control and shall file a written certification with the Court stating that they have done so and have not retained any such documents and things or any copies, electronic or otherwise, of such things:

1.  All Activision property, including but not limited to documents, files, materials and things containing or derived from Activision Proprietary Information and/or that Defendants acquired, received, developed or worked on during the period of time that they worked for Activision having anything to do with the video game business; and

2.  All documents, files, materials and things related to the business venture Hourglass Interactive and/or Lodestone Entertainment and/or otherwise related to any communications with or involving Reverb, The Ant Commandos, Doug Kennedy, Hong Lip Yow, Raymond Yow and/or any third party with whom you communicated related to the business venture Hourglass Interactive and/or Lodestone Entertainment.

C.  Defendants shall, within five (5) days of the entry of this Consent Judgment and Permanent Injunction, disclose in writing to Activision all disclosures of information, documents or materials related to or referring to Activision's business or products or to the Tam Demo to third parties, including a description of what was disclosed and the identity of any third parties receiving such information and shall file a written certification with the Court stating that they have done so.

D.  Service by mail upon the counsel of record of a copy of this Consent Judgment and Permanent Injunction entered by the Court is deemed sufficient notice to Defendants under Rule 65(d) of the Federal Rules of Civil

1    Procedure.  It shall not be necessary for any Defendant to sign any form of
2    acknowledgement of service.
3    E.    Except as otherwise provided for in the Settlement Agreement, the parties
4        shall bear their own attorneys' fees and costs.
5
6    **IT IS SO ORDERED.**
7
8    Dated: March 27, 2007        By: _____
                                      Hon. Percy Anderson
9                                     United States District Judge
10
11   APPROVED AS TO FORM AND CONTENT:
12
13   Dated:  March 26, 2007        JONES DAY
14
15                                 By: _____
16                                     Michael A. Tomasulo
17                                 Attorneys for Plaintiff
                                   ACTIVISION PUBLISHING, INC.
18
19   Dated:  March 26, 2007        WANG HARTMANN & GIBBS PC
20
                                   By: _____
21                                     Richard Cauley
22                                 Attorneys for Defendants
                                   JOHN TAM, JAMIE YANG, COREY FONG
23
24
25
26
27
28

LAI-2856960v1
                                    - 10 -

SCANNED























1    PROOF OF SERVICE

2    STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3        I am employed in the County of Los Angeles, State of California. I am over
     the age of 18 and not a party to the within action; my business address is 555 S.
4    Flower Street, 50th Floor, Los Angeles, California 90071.

5    On March 26, 2007, I caused to be served the foregoing document described as
     [PROPOSED] CONSENT JUDGMENT AND PERMANENT INJUNCTION AS
6    TO DEFENDANTS JOHN TAM AND COREY FONG on all other parties to this
     action addressed as follows:

7
     Richard F. Cauley, Esq.                      Kurt E. Wilson, Esq.
8    Wang, Hartmann & Gibbs, PC                   Sweeney, Mason, Wilson & Bosomworth
     1301 Dove Street, Suite 1050                 983 University Avenue, Suite 104C
9    Newport Beach, CA 92660                      Los Gatos, CA 95032-7637
     Facsimile:  949-833-2281                     Facsimile:  408-354-8839
10   E-mail:    rcauley@whglawfirm.com            E-mail:    kwilson@smwb.com

11   Michael A. Oswald, Esq.
     Oswald & Yap
12   16148 Sand Canyon Avenue
     Irvine, CA 92618
13   Facsimile:  949-788-8980
     E-mail:    mao@oswald-yap.com

14   X    BY MAIL
15       I caused each such envelope to be deposited in the mail at Los Angeles,
     California.  Each such envelope was mailed with postage thereon fully
16   prepaid.  I am "readily familiar" with the firm's practice of collection and
     processing correspondence for mailing.  It is deposited with the U.S. Postal
17   Service on that same day in the ordinary course of business.  I am aware that
     on motion of party served, service is presumed invalid if postal cancellation
18   date or postage meter date is more than one (1) day after date of deposit for
     mailing in affidavit.
19   EXECUTED on  March 26, 2007  at Los Angeles, California.

20   X    BY E-MAIL
21       I caused such document to be served via e-mail at the above-identified e-mail
     addresses.
22   EXECUTED on  March 26, 2007  at Los Angeles, California.

22   X    (Federal)    I declare that I am employed in the office of a member of the
23                     Bar of this Court at whose direction the service was made.

24

25        Gloria C. Perez
     Type or Print Name                          Signature

26

27

28

     LAI-2853481v1

EXHIBIT D





FILED
CLERK, U.S. DISTRICT COURT

APR 19 2007

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ACTIVISION PUBLISHING, INC., a
Delaware corporation,

　　　　　　　Plaintiff,

　　v.

JOHN TAM, an individual, JAMIE
YANG, an individual, COREY FONG,
an individual, DOUG KENNEDY, an
individual, HONG LIP YOW, an
individual, RAYMOND YOW, an
individual, REVERB
COMMUNICATIONS, INC., a
California corporation, and THE ANT
COMMANDOS, INC., a California
corporation,

　　　　　　　Defendants.

Case No. CV 07-00464 ~~CAS~~ PA(Ex)

[~~PROPOSED~~] CONSENT
JUDGMENT AND PERMANENT
INJUNCTION AS TO
DEFENDANT JAMIE YANG



DOCKETED ON CM

APR 20 2007

BY _____ 005

LAI-2859192v1

1    WHEREAS plaintiff Activision Publishing, Inc. ("Activision") and defendant
2  Jamie Yang ("Yang") have agreed in a separate confidential agreement to
3  settlement of the matters in issue between them and to entry of this Consent
4  Judgment and Permanent Injunction, it is hereby ORDERED, ADJUDGED, AND
5  DECREED THAT:

6    1.    Activision alleged claims against Yang for: (1) copyright infringement
7  under 17 U.S.C. § 501, *et seq.*; (2) violation of Section 43(a) of the Lanham Act
8  under 15 U.S.C. § 1125(a); (3) violation of the Computer Fraud and Abuse Act
9  pursuant to 18 U.S.C. §§ 1030(a)(4) and (a)(5)(B); (4) violation of California Penal
10  Code § 502; (5) misappropriation of trade secrets under California Civil Code §§
11  3426, *et seq.*; (6) misappropriation of confidential information; (7) breach of
12  contract; (8) breach of duty of loyalty and fiduciary duty; (9) statutory unfair
13  competition under California Business and Professions Code § 17200, *et seq.*; (10)
14  common law unfair competition; and (11) conversion.

15    2.    This Court has jurisdiction over all of the parties in this action and
16  over the subject matter in issue based on 28 U.S.C. §§1331, 1338(a) and 1367(a), as
17  well as 15 U.S.C. § 1121(a) and 18 U.S.C. § 1030(g). This Court further has
18  continuing jurisdiction to enforce the terms and provisions of this Consent
19  Judgment and Permanent Injunction. Venue is also proper in this Court pursuant to
20  28 U.S.C. §§1391(b).

21    3.    Plaintiff Activision is a Delaware corporation, having its principal
22  place of business at 3100 Ocean Park Boulevard, Santa Monica, California 90405.

23    4.    Defendant Tam, an individual who resides in Milpitas, California, was
24  until recently an employee of Activision.

25    5.    Defendant Yang, an individual who resides in San Jose, California,
26  was until recently an employee of Activision.

27    6.    Defendant Fong, an individual who resides in Foster City, California,
28  was until recently an employee of Activision.

1    7.    Tam, Fong and Yang communicated with Doug Kennedy
2    ("Kennedy"), Reverb Communications, Inc. ("Reverb"), The Ant Commandos
3    ("TAC"), Hong Lip Yow ("H. Yow") and Raymond Yow ("R. Yow") to form a
4    company, referred to initially as Hourglass Interactive and then, ultimately,
5    Lodestone Entertainment, Inc., to compete with Activision using Activision's
6    confidential and proprietary information that Tam, Fong and Yang had obtained
7    from Activision. (Hereinafter, Defendants' contemplated business venture is
8    referred to as "Lodestone"). Through Lodestone, Defendants planned to sell a
9    video game ("Defendants' Game") in competition with Activision's award-winning
10   rhythm based music games called Guitar Hero™ and Guitar Hero II™ (collectively
11   the "Guitar Hero™ franchise").

12   8.    Activision is the owner of the copyrights in the audiovisual material
13   associated with the Guitar Hero™ franchise, which copyrights have been
14   registered, including Copyright Registration PA-1-322-764 for Guitar Hero™. This
15   copyright is valid and enforceable throughout the United States.

16   9.    Lodestone intended to target a confidential and proprietary Activision
17   corporate opportunity for the Guitar Hero™ franchise involving a certain
18   confidential third party (the "Third Party")[1] that was known to Tam, Fong and Yang
19   by virtue of their employment with Activision.

20   10.   Tam, working with Fong, directed an Activision employee and
21   Activision independent contractors to develop, at Activision's expense, a demo of
22   Defendants' Game (the "Tam Demo") for use by Defendants. Defendants
23   reproduced, displayed, published, distributed, sold and/or promoted the Tam Demo
24   without Activision's authorization or consent.

25

26   [1] Because the identity of the Third Party is Activision confidential and trade
27   secret information, the name of this party is not disclosed in this Consent Judgment
     and Permanent Injunction but may be found in Appendix B to the confidential
28   Settlement Agreement between the parties.

1          11.    Defendants intended to and did use the Tam Demo, to solicit partners

2    and funds for Lodestone. The Defendants' decision to target and/or partner with

3    the Third Party was based on Activision's confidential and trade secret information.

4          12.    Yang signed Activision's Form of Employee Proprietary Information

5    Agreement ("Proprietary Information Agreement") obligating her to hold in strict

6    confidence, and not use or disclose except for the benefit of Activision, Activision

7    Proprietary Information.[2] Yang explicitly acknowledged and agreed that the

8    Proprietary Information Agreement she signed constitutes a valid and binding

9    agreement. Yang also explicitly acknowledged and agreed that Activision

10   Proprietary Information includes, but is not limited to, the following confidential

11   and trade secret information, which derives independent economic value from not

12   being generally known to the public or to other persons who can obtain economic

13   value from its disclosure or use:

14

15

16        [2] "Activision Propriety Information" includes all Activision confidential and
     trade secret information and, as set forth in the Employee Proprietary Information
17   Agreement signed by Tam, Yang and Fong, specifically includes:

18        any and all trade secrets, confidential knowledge, data or any
     other proprietary information pertaining to any business of the
19   Company or any of its clients, customers or consultants,
     licensees or affiliates. By way of illustration but not limitation,
20   "Proprietary Information" includes (a) inventions, ideas,
     improvements, discoveries, trade secrets, processes, data,
21   programs, knowledge, know-how, designs, techniques, formulas,
     test data, computer code, other works of authorship and designs
22   whether or not patentable, copyrightable, or otherwise protected
     by law, and whether or not conceived of or prepared by me,
23   either alone  or jointly with others (hereinafter collectively
     referred to as "Inventions"); (b) information regarding research,
24   development, new products and services, marketing plans and
     strategies, merchandising and selling, business plans, strategies,
25   forecasts, projections, profits, investments, operations,
     financings, records, budgets and unpublished financial
26   statements, licenses, prices and costs, suppliers and customers;
     and (c) identity, requirements, preferences, practices and
27   methods of doing business of specific parties with whom the
     Company transacts business, and information regarding the
28   skills and compensation of other employees of the Company and
     independent contractors performing services for the Company.

1        (a)    Financial information related to the Guitar Hero™ franchise,

2               including but not limited to, profit and loss information, cost

3               information, expenses, contract terms, sales numbers and

4               forecasts, information contained in the Guitar Hero II™ Budget

5               Summary, information contained in the Guitar Hero II™ North

6               American Xbox 360™ Strategy PowerPoint, information

7               contained in the Variable Sales & Marketing spreadsheet,

8        (b)    Marketing information related to the Guitar Hero™ franchise,

9               including but not limited to marketing partners, contract terms,

10              marketing categories, information contained in the Guitar

11              Hero™ franchise plans, and identified growth areas for the

12              Guitar Hero™ franchise,

13       (c)    Product information related to the Guitar Hero™ franchise,

14              including but not limited to product design, such as the design

15              for the Guitar Hero II™ Xbox 360™ controller design, future

16              product ideas and designs,

17       (d)    Profit and loss statements developed by Tam, Fong and/or Yang

18              which were derived from Guitar Hero™ financial information,

19              including such statements developed for Hourglass Interactive

20              and/or Lodestone Entertainment,

21       (e)    Information related to music licensing and in game advertising

22              for the Guitar Hero™ franchise, including but not limited to

23              contract terms, identities of possible future songs and artists to

24              include, and identities of partners for licensing or in game

25              advertising, and

26       (f)    Vendor information related to the Guitar Hero™ franchise,

27              including but not limited to vendor identities and contact lists,

28              vendor pricing, and vendor contract terms.

1    13.    Yang entered into a binding and valid employment agreement with
2  Activision. This contract required that, among other things, the term of Yang's
3  employment would continue until May 31, 2007, and that during that time she
4  would not work for any Activision competitor. TAC is an Activision competitor.

5    14.    THEREFORE, it is hereby further ORDERED, ADJUDGED AND
6  DECREED THAT:

7  A.    Jamie Yang, her, officers, directors, agents, servants, employees, attorneys,
8       and those in active concert or participation with her who receive actual
9       notice of this injunction by personal service or otherwise ARE
10      RESTRAINED AND ENJOINED from:

11      1.    Copying, distributing, displaying or using any content derived or
12            copied from the Guitar Hero™ or Guitar Hero II™ video game;

13      2.    Copying, distributing, displaying or using the game demo created by
14            John Tam based on Guitar Hero™ and StepMania, screenshots of
15            which are attached hereto as **Exhibit 1** (the "Tam Demo") and/or
16            copying, distributing, displaying or using any content derived or copied
17            therefrom;

18      3.    Manufacturing, selling, offering for sale, advertising or distributing the
19            Tam Demo, or any rhythm based video game including or derived from
20            any Activision Proprietary Information;

21      4.    Taking any steps to develop, market, manufacture, sell or distribute
22            any guitar, synthesizer or drum based video games, including any
23            peripherals for those games, until December 31, 2007;

24      5.    Using, disclosing, transferring, distributing or reproducing any
25            Activision Proprietary Information and any materials or information
26            derived therefrom, including but not limited to, using it in connection
27            with developing a music or rhythm based game, or in starting a

28

1    company, said Activision Proprietary Information including but not

2    limited to:

3    • Financial information related to the Guitar Hero™ franchise,

4    including but not limited to, profit and loss information, cost

5    information, expenses, contract terms, sales numbers and

6    forecasts, information contained in the Guitar Hero II™ Budget

7    Summary, information contained in the Guitar Hero II™ North

8    American Xbox 360™ Strategy PowerPoint, information

9    contained in the Variable Sales & Marketing spreadsheet,

10    • Marketing information related to the Guitar Hero™ franchise,

11    including but not limited to marketing partners, contract terms,

12    marketing categories, information contained in the Guitar

13    Hero™ franchise plans, and identified growth areas for the

14    Guitar Hero™ franchise,

15    • Product information related to the Guitar Hero™ franchise,

16    including but not limited to product design, such as the design

17    for the Guitar Hero II™ Xbox 360™ controller design, future

18    product ideas and designs,

19    • Profit and loss statements developed by John Tam, Corey Fong

20    and/or Jamie Yang which were derived from Guitar Hero™

21    financial information, including such statements developed for

22    Hourglass Interactive and/or Lodestone Entertainment,

23    • Information related to music licensing and in game advertising

24    for the Guitar Hero™ franchise, including but not limited to

25    contract terms, identities of possible future songs and artists to

26    include, and identities of partners for licensing or in game

27    advertising, and

28

1          •    Vendor information related to the Guitar Hero™ franchise,

2                  including but not limited to vendor identities and contact lists,

3                  vendor pricing, and vendor contract terms;

4      6.    Taking any steps to develop, market, manufacture, sell or distribute

5            any guitar controller intended to be compatible with Activision's

6            Guitar Hero II™ game for the Microsoft Xbox 360™ game console

7            until six months after Activision commercially releases the Activision

8            Guitar Hero II™ game for the Microsoft Xbox 360™ game console or

9            until December 31, 2007;

10     7.    Taking any steps to develop, market, manufacture, sell or distribute

11           any of the confidential peripheral devices disclosed in Appendix A

12           until six months after Activision commercially releases such a device

13           or until December 31, 2007;

14     8.    Disclosing, transferring, distributing, reproducing or using any of the

15           business plans developed by Jamie Yang, Corey Fong or John Tam or

16           otherwise derived from those individuals for The Ant Commandos or

17           for the business venture referred to variously as Hourglass Interactive

18           and Lodestone Entertainment;

19     9.    Soliciting Activision employees for a period of one (1) year;

20     10.   Soliciting any of the Activision partners and growth areas identified in

21           Appendix B to the confidential Settlement Agreement for a period of

22           one (1) year; and

23     11.   Soliciting any of the manufacturing vendors identified in Appendix C

24           to the confidential Settlement Agreement for a period of one (1) year.

25   B.    Yang shall, within five (5) days of entry of this Consent Judgment and

26       Permanent Injunction, deliver the documents and things listed below in her

27       possession, custody or control and shall file a written certification with the

28

1    Court stating that she has done so and has not retained any such documents

2    and things or any copies, electronic or otherwise, of such things:

3        1.    All Activision property, including but not limited to documents, files,

4            materials and things containing or derived from Activision Proprietary

5            Information and/or that Yang acquired, received, developed or worked

6            on during the period of time that she worked for Activision having

7            anything to do with the video game business; and

8        2.    All documents, files, materials and things related to the business

9            venture Hourglass Interactive and/or Lodestone Entertainment and/or

10           otherwise related to any communications with or involving Reverb,

11           The Ant Commandos, Doug Kennedy, Hong Lip Yow, Raymond Yow

12           and/or any third party with whom Yang communicated related to the

13           business venture Hourglass Interactive and/or Lodestone

14           Entertainment.

15   C.   Yang shall, within five (5) days of the entry of this Consent Judgment and

16       Permanent Injunction, disclose in writing to Activision all disclosures of

17       information, documents or materials related to or referring to Activision's

18       business or products or to the Tam Demo to third parties, including a

19       description of what was disclosed and the identity of any third parties

20       receiving such information and shall file a written certification with the Court

21       stating that she has done so.

1    D.    Service by mail upon the counsel of record of a copy of this Consent

2          Judgment and Permanent Injunction entered by the Court is deemed

3          sufficient notice to Defendants under Rule 65(d) of the Federal Rules of Civil

4          Procedure. It shall not be necessary for any Defendant to sign any form of

5          acknowledgement of service.

6    E.    Except as otherwise provided for in the Settlement Agreement, the parties

7          shall bear their own attorneys' fees and costs.

8

9    **IT IS SO ORDERED.**

10

11   Dated: April ___, 2007          By: _____
                                          Hon. Percy Anderson
12                                        United States District Court Judge

13

14   APPROVED AS TO FORM AND CONTENT:

15

16   Dated: April ___, 2007          JONES DAY

17

18                                   By: _____
                                          Robert W. Dickerson
19
                                     Attorneys for Plaintiff
20                                   ACTIVISION PUBLISHING, INC.

21

22   Dated: April ___, 2007          WANG HARTMANN & GIBBS PC

23

24                                   By: _____
                                          Richard Cauley
25
                                     Attorneys for Defendant
26                                   JAMIE YANG

27

28

LAI-2859192v1                        - 10 -

1  D.    Service by mail upon the counsel of record of a copy of this Consent

2         Judgment and Permanent Injunction entered by the Court is deemed

3         sufficient notice to Defendants under Rule 65(d) of the Federal Rules of Civil

4         Procedure. It shall not be necessary for any Defendant to sign any form of

5         acknowledgement of service.

6  E.    Except as otherwise provided for in the Settlement Agreement, the parties

7         shall bear their own attorneys' fees and costs.

8

9  **IT IS SO ORDERED.**

10

11  Dated: April _18_, 2007        By: _____

                                       Hon. Percy Anderson
12                                     United States District Court Judge

13

14  APPROVED AS TO FORM AND CONTENT:

15

16  Dated: April _16_, 2007        JONES DAY

17

18                                 By: _____

19                                     Robert W. Dickerson

20                                 Attorneys for Plaintiff
                                   ACTIVISION PUBLISHING, INC.

21

22  Dated: April ___, 2007         WANG HARTMANN & GIBBS PC

23

24                                 By: _____

                                       Richard Cauley
25
                                   Attorneys for Defendant
26                                 JAMIE YANG

27

28

LAI-2859192v1                      - 10 -

1

## PROOF OF SERVICE

2   STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3       I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 555 S. Flower Street, 50th Floor, Los Angeles, California 90071.

4

5   On April 17, 2007, I caused to be served the foregoing document described as [PROPOSED] CONSENT JUDGMENT AND PERMANENT INJUNCTION AS TO DEFENDANT JAMIE YANG on all other parties to this action addressed as follows:

6

7

8   Richard F. Cauley, Esq.
    Wang, Hartmann & Gibbs, PC
    1301 Dove Street, Suite 1050

9   Newport Beach, CA 92660
    Facsimile: 949-833-2281

10  E-mail:   rcauley@whglawfirm.com

    Kurt E. Wilson, Esq.
    Sweeney, Mason, Wilson & Bosomworth
    983 University Avenue, Suite 104C
    Los Gatos, CA 95032-7637
    Facsimile: 408-354-8839
    E-mail:   kwilson@smwb.com

11  Michael A. Oswald, Esq.
    Oswald & Yap

12  16148 Sand Canyon Avenue
    Irvine, CA 92618

13  Facsimile: 949-788-8980
    E-mail:   mao@oswald-yap.com

14    X  **BY MAIL**

15      I caused each such envelope to be deposited in the mail at Los Angeles, California. Each such envelope was mailed with postage thereon fully prepaid. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

16

17

18

19      EXECUTED on April 17, 2007 at Los Angeles, California.

20      **BY FEDERAL EXPRESS**
    I caused each such envelope, with delivery fees provided for, to be served via Federal Express. I am "readily familiar" with the firm's practice of arranging

21  envelopes to be delivered on an overnight basis by Federal Express. Federal Express will send its authorized courier to pick up envelopes which bear

22  Jones Day's Federal Express Account Number at the firm's office in Los Angeles, California, and that thereafter Federal Express will deliver such

23  sealed envelopes on an overnight basis in the ordinary course of business.
    EXECUTED on April 17, 2007 at Los Angeles, California.

24

25      **BY FACSIMILE**
    I caused such document to be served via facsimile at the above-identified

26  facsimile number, our telecopier confirming that the transmissions were received intact.

27      EXECUTED on April 17, 2007 at Los Angeles, California.

28

LAI-2859843v1

1    X    **BY E-MAIL**
        I caused such document to be served via e-mail at the above-identified e-mail
2        addresses.
        EXECUTED on __April 17, 2007__ at Los Angeles, California.
3
        **BY PERSONAL SERVICE**
4        I caused each such envelope to be delivered by hand to the offices of the
        addressee(s)
5        EXECUTED on __April 17, 2007__ at Los Angeles, California.

6    __X__ (Federal)        I declare that I am employed in the office of a member of the
                        Bar of this Court at whose direction the service was made.
7

8        *Frances Corrales*
9        Frances Corrales                         *Frances Corrales*
                                            Signature
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAI-2859843v1